**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN L. WORK,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. 1:14-cv-01582-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

Plaintiff John L. Work seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act"). The matter is before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Magistrate Judge. Following a review of the record and applicable law, the Court concludes the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and free of legal error and, accordingly, affirms the ALJ's decision.

1

I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

A. *Procedural History*

Plaintiff applied for SSI on May 4, 2011, alleging disability beginning on October 14, 2004. AR 221-222. The Commissioner denied the claims on September 27, 2011, and upon reconsideration, on March 14, 2012. AR117, 129. Plaintiff then filed a timely request for a hearing. AR 149.

Plaintiff appeared and testified before an ALJ, John Cusker, on March 22, 2013. Also at the hearing were Plaintiff's counsel and an impartial vocational expert ("VE"), Stephen Schmidt. AR 36. In a written decision dated May 30, 2013, the ALJ found Plaintiff was not disabled under the Act. AR 28. On August 11, 2014, the Appeals Council denied review of the ALJ's decision, which thus became the Commissioner's final decision. AR 3. Plaintiff filed a timely complaint on October 8, 2014. Doc. 1.

B. *Factual Background*

The Court will not recount in detail all the facts of this case, discussing only what is relevant for purposes of this order.

Plaintiff previously applied for SSI and disability insurance benefits in 2005. AR 56. In a written decision issued in 2007, an ALJ found Plaintiff not disabled because he was capable of making a successful adjustment to work certain jobs which existed in significant numbers in the national economy. AR 83, 97. The decision set forth Plaintiff's alcohol dependency and discussed Plaintiff's participation in the Chemical Dependency Treatment Program (CDTP) while receiving care through the Department of Veterans Affairs ("VA"). That ALJ found Plaintiff had severe impairments of chronic obstructive pulmonary disease ("COPD"), depressive disorder, and alcohol

---

[1] The relevant facts herein are taken from the Administrative Record ("AR").

abuse in early remission but found his statements concerning their collective symptoms not entirely credible based on the record. AR 88, 92-94.

Plaintiff's application for SSI in 2011 stemmed from an alleged inability to work due to a head injury, depression, uncontrollable shaking, and COPD. AR 102. It is undisputed that, as with his 2005 applications for benefits, substance use remained a problem.

1. Medical Evidence

The record contained substantial treatment notes from the Fresno VA Hospital. Generally covering the period between 2010 and 2013, they documented Plaintiff's struggle with substance use and depression. He developed PTSD symptoms after being in prison for five years from 1999 to 2003 and turned to drinking to control his emotions. AR 504.

On numerous occasions, Plaintiff was admitted to the VA Hospital under California Welfare and Institutions Code section 5150:[2]

1) On March 12, 2010, Plaintiff was brought in by ambulance for being a danger to self and/or others. He reported drinking heavily that day and several days prior, and that he had been drinking all his life. Plaintiff agreed to follow up in CDTP the next day. AR 370-371.

---

[2] Section 5150 states, in relevant part:

> When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the attending staff . . . of an evaluation facility designated by the county, designated members of a mobile crisis team provided by Section 5651.7, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation.

Cal. Welf. & Inst. Code § 5150 (2011).

3

2) On July 4, 2011, Plaintiff was brought in by ambulance after Fresno Police officers found him sitting next to a pool with a cinder block tied to his body, intoxicated, and stating that he wanted to "end it all." AR 365. Plaintiff told Dr. Beverly A. Cho he had been depressed his entire life and was diagnosed with PTSD while incarcerated. He refused CDTP and stated he wanted to do it on his own time, but requested treatment for his depressive symptoms. AR 367-368.

3) On August 27, 2011, Plaintiff was brought in by ambulance after a fight with his roommate. Dr. Sabeena Sandhu noted Plaintiff endorsed more anxiety symptoms than depression, had been drinking the last few days, and refused CDTP. AR 603.

4) On October 17, 2011, Plaintiff was admitted for stabilization and detox following self-injurious behavior. He told staff psychiatrist Joanna S. Gedzior that he recently started drinking regularly and endorsed regular cannabis use. He denied PTSD symptoms during admission and declined CDTP. AR 457-458.

5) On July 5, 2012, Plaintiff was admitted for making a suicide threat while intoxicated. He had been drinking that day and got into an argument with his wife, becoming violent. He refused CDTP. AR 759-762.

6) On December 31, 2012, Plaintiff was brought in by ambulance after he became inebriated following an argument with his wife. AR 845.

Dr. Steven C. Swanson conducted a psychological assessment of Plaintiff on August 18, 2011 by referral of the Department of Social Services. Plaintiff reported a history of polysubstance addiction, which included alcohol, cocaine and methamphetamine, and stated he has not been hospitalized in a psychiatric setting. He was on Prozac, an anti-depressant, and diagnosed with COPD but continuing to smoke. AR 441-443. Overall, Dr. Swanson opined that Plaintiff could

4

maintain concentration and relate appropriately to others in a job setting; handle funds in his own interests; understand, carry out and remember simple instructions; respond appropriately to usual work situations; deal with changes in routine; had no substantial restrictions in daily activities; and had no difficulties in maintaining social relationships. AR 446-447.

   2. <u>Plaintiff's Testimony</u>

Plaintiff was 52 years old at the time of the hearing and had acquired a GED. AR 37-38. He lived with his girlfriend and two roommates. AR 44-45. He appeared with a cast on his left leg, which he stated was not prescribed by a physician, but helped with his arthritis. AR 41.

Plaintiff stated he had problems working around people. AR 40. He last worked as a parking lot sweeper but had not worked in the last 15 years. AR 38. He spent approximately nine hours a day recycling. AR 40.

Plaintiff was born with gout. He drank alcohol about three times a week, each time consuming two 32-ounce beers plus two shots, despite his physicians' advice to stop drinking because of his gout. AR 42, 46. His physicians offered rehabilitation services and psychiatric treatment, which Plaintiff refused. AR 42. Plaintiff also used illicit drugs. He smoked a joint of marijuana a day and last used methamphetamine ten years ago. AR 42-43.

Plaintiff received check-ups and met with his physicians at the VA hospital every two months. AR 44. He took medications for nightmares, anxiety, depression, and pain and inflammation in his joints. AR 43-44. Plaintiff tried to commit suicide a few times. AR 48.

Plaintiff could prepare meals and do household chores like vacuuming and shampooing the carpet. He did not go shopping or do laundry. AR 45. Once or twice a week Plaintiff struggled to get out of bed due to his gout pain. AR 46-47. He also suffered seizures once or twice a week due to an accident where he drank excessively and fell on his head out of a car. AR 49. He managed to

abstain from drinking or using drugs for about one-and-a-half years around 2004 and 2005.  AR 51.

### 3. ALJ's Decision

A claimant is disabled under Titled II and XVI if he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[3]

The ALJ initially employed the five-step sequential process and found Plaintiff disabled.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date of May 4, 2011.  At step two, Plaintiff had the following severe impairments: COPD, polysubstance abuse and dependence, and posttraumatic stress disorder (PTSD).  At step three, Plaintiff's impairments, including the substance use disorders, met listings 12.06 and 12.09 in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 17.

In light of Plaintiff's substance use disorders, however, the ALJ made additional findings.

---

[3] The ALJ must determine: "(1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work."  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quotations, citations and footnote omitted); 20 C.F.R. §§ 404.1520; 416.920 (2011).  Residual functional capacity is "the most" a claimant "can still do despite [the claimant's] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a) (2011).  "The claimant carries the initial burden of proving a disability in steps one through four of the analysis.  However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

He found that if Plaintiff stopped his substance use: (1) the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities such that he would continue to have a severe impairment or combination thereof—namely COPD and PTSD; (2) Plaintiff's impairment or combination thereof would not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) Plaintiff would have the RFC to perform a full range of work at all exertional levels, but he would need to avoid concentrated exposure to certain conditions, would be able to understand, remember, and carry out simple one to two step instructions with limited public contact, would be able to relate appropriately to coworkers and supervisors, would be able to adapt appropriately to a routine work setting, and would be moderately limited in ability to complete a work schedule; (4) Plaintiff would not be able to perform his past relevant work; (5) There would be a significant number of jobs in the national economy which Plaintiff could perform, namely hand packer, electronics worker, and inspector; and, (6) The substance use disorders were a contributing factor material to the disability determination because Plaintiff would not be disabled if he stopped the substance use. Consequently, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act because the substance use disorders were a contributing factor material to the disability determination. AR 18-28.

## II. DISCUSSION

A. *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

"If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner. However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted). "If the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010). But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Nevertheless, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

B. *Analysis*

Plaintiff seeks reversal of the Commissioner's decision on two grounds: (1) the ALJ erred in failing to properly employ the five-step sequential process in determining disability, irrespective of Plaintiff's substance use, before proceeding to analyze the effect of the substance use, and (2) the ALJ improperly rejected the treating physician's opinion concerning Plaintiff's PTSD without reason. Doc. 14.

1. Substance Use

Relying on *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001), Plaintiff avers the ALJ "engaged in a truncated five-step inquiry" in considering the impact of Plaintiff's substance use. Doc. 14. The Commissioner argues the contrary, stating "the ALJ thoroughly went through each of the steps separating out the effects of drug addiction and alcoholism." Doc. 18. Indeed, the ALJ's

written decision belies Plaintiff's assertion.

In *Bustamante*, the Ninth Circuit explained the role of alcohol or drug addiction in the disability determination as follows:

> Under provisions added by the Contract with America Advancement Act, Pub.L. No. 104–121, 110 Stat. 847 (March 29, 1996), an 'individual shall not be considered to be disabled for purposes of [benefits under Title II or XVI of the Act] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.' 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); *see also Sousa v. Callahan,* 143 F.3d 1240, 1242 (9th Cir.1998). The SSA's implementing regulations specify: 'If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.' 20 C.F.R. §§ 404.1535(a), 416.935(a). . . .
>
> The implementing regulations, 20 C.F.R. §§ 404.1535 and 416.935, both begin with the conditional language '[i]f we find that you are disabled....' It follows that an ALJ should not proceed with the analysis under §§ 404.1535 or 416.935 if he or she has not yet found the claimant to be disabled under the five-step inquiry. *See Drapeau,* 255 F.3d 1211, 1214 ('The ALJ cannot begin to apply [42 U.S.C.] § 423(d)(2)(C) properly when, as here, he has not yet made a finding of disability.') In other words, an ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935. If the ALJ finds that the claimant is disabled and there is 'medical evidence of [his or her] drug addiction or alcoholism,' then the ALJ should proceed under §§ 404.1535 or 416.935 to determine if the claimant 'would still [be found] disabled if [he or she] stopped using alcohol or drugs.' 20 C.F.R. §§ 404.1535, 416.935.

*Id.* at 954-955.

In this case, the ALJ's disability determination complied with section 416.935. The ALJ first conducted the five-step inquiry without separating the impact of Plaintiff's substance abuse. After finding Plaintiff had not engaged in substantial gainful activity since May 4, 2011, the ALJ

9

found, at step 2, that Plaintiff had the following severe impairments: COPD, *polysubstance abuse and dependence*, and PTSD.  Then, at step three, the ALJ provided an extensive analysis and found Plaintiff's impairments met listings 12.06 and 12.09 in 20 C.F.R. Part 404, Subpart P, Appendix 1.  This meant Plaintiff was found disabled.  *See* 20 C.F.R. 416.920(a)(4) (iii) (2011) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled.")

Indeed, it was only after the ALJ found Plaintiff disabled at step three of the five-step inquiry that he proceeded to engage in an analysis of whether Plaintiff would still be disabled without the substance abuse.  That the five-step inquiry ended at step three is not indicative of a failure to follow *Bustamante*.  The ALJ did not, contrary to Plaintiff's conduct a "truncated" analysis of the five-step inquiry.

2. <u>Treating Physician</u>

Citing to progress notes from Dr. Sophia Le[4] focusing on his PTSD, Plaintiff avers the ALJ erred in offering "no reasoning whatsoever" in rejecting Dr. Le's impression and instead finding that alcohol and drug dependency were primary problems.  Doc. 14.  The Commissioner contends the ALJ committed no legal error and that his finding was supported by substantial evidence.

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (footnote and citation omitted).  To reject a treating physician's opinion which is contradicted

---

[4] Dr. Le was a postgraduate in her first year of residency at the VA Hospital.  Her assessments were reviewed and cosigned by the attending staff psychiatrist, Dr. Roy Raroque.  AR 585.

10

by another physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Id.* (internal quotations omitted); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010). If the treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons supported by substantial evidence in the record. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). But an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quotations and citation omitted).

Dr. Le examined Plaintiff on October 17, 2011, after he was brought in by ambulance under section 5150. In a paragraph setting forth her impressions of him, Dr. Le noted Plaintiff had PTSD from his time in prison, which "lead him to drink which worsen [*sic*] his depression leading to suicidal thoughts and self injurous [sic] behavior." AR 582. Plaintiff reported "increasing nightmares from his worsening PTSD due to failre [*sic*] to follow up and refill his medication." AR 582. Dr. Le deemed Plaintiff unsafe for discharge and that he "would benefit from treatment of his underlying PTSD which was fueling his alcohol and cutting behaviors." AR 582. Indeed, the ALJ did not explicitly discuss Dr. Le's impressions. But, he discussed Dr. Gedzior's October 18, 2011 notes, which stated Plaintiff denied active PTSD symptoms. AR 24, 458. To argue, as Plaintiff has done, that PTSD is the primary problem and that the ALJ erred in failing to accord Dr. Le's opinion proper weight, is specious.

First, the ALJ recognized Plaintiff's PTSD and deemed it a severe impairment which would persist even if he stopped the substance use. Second, there is no evidence that Dr. Le was Plaintiff's treating physician. *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) ("The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a*

11

*claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.") (quotations omitted and emphasis in original).  The record in this case did not reflect a relationship of the "duration and frequency" required between a patient and his treating physician.  *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) ("The treating physician's opinion is given particular weight because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'  20 C.F.R. § 416.927(d)(2).")  There is no evidence of Dr. Le seeing Plaintiff over a period of time "long enough to . . . obtain[] a longitudinal picture of [his] impairment[.]"  20 C.F.R. § 416.927(c)(2)(i).

Finally, as the Commissioner correctly points out, Dr. Le's statements did not amount to a medical opinion about Plaintiff's PTSD.  *See* 20 C.F.R. § 416.927 (2011) ("Medical opinions . . . from physicians . . . reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.")  Aside from being statements from a physician, Dr. Le's impressions speak little of the nature and severity of his PTSD and contained no prognosis.  Additionally, the statements stemmed from a brief diagnostic impression, based in part on Plaintiff's statement that his PTSD had worsened.  The ALJ was therefore not required to accept or give controlling weight to Dr. Le's opinion.  *See Chaudhry*, 688 F.3d at 671.

Plaintiff takes issue with the ALJ's finding that VA physicians "indicated that [Plaintiff's] primary problem is alcohol and drug dependence and abuse."  AR 26.  But far from being cursory and conclusory, the ALJ preceded his finding with reference to over a dozen medical records referencing Plaintiff's substance use.  These included:

1) A July 13, 2011 list of problems including alcohol dependency in remission and cannabis abuse in remission;

2) Plaintiff's admission of being under the influence of alcohol during his internal medicine evaluation by Dr. Samuel B. Rush on June 16, 2010;

3) Dr. Steven C. Swanson's August 21, 2011 psychological assessment of Plaintiff containing a diagnosis of polysubstance dependence in partial remission;

4) Plaintiff's July 6, 2011 admission to VA staff psychiatrist Patricia Santy about drinking one pint of whisky and a can of beer daily for five years to medicate his anxiety and shame from his criminal conviction;

5) Plaintiff's October 17, 2011 admission to Dr. Gedzior that he consumed a drink, a pint of vodka, and a 16-ounce beer the day before, and that he drinks and uses cannabis regularly;

6) Dr. Beverly Chang's January 24, 2012 impressions of Plaintiff's alcohol dependence and marijuana abuse;

7) Plaintiff's March 22, 2012 admission to licensed clinical social worker ("LCSW") Lawanda Roper of high alcohol consumption and refusal to undergo chemical dependency treatment because it did not work in the past and he did not like being around people;

8) Dr. Alaric Donham Frazier's July 8, 2012 notes which indicated Plaintiff refused to participate in CDTP despite frequent relapse into substance abuse, before being discharged after admission under section 5150 for making a suicide threat while intoxicated;

9) Plaintiff's November 26, 2012 admission to Dr. Chang about consuming four beers daily and a fifth whiskey every other day as a way to forget his stressors;

10) Dr. Gedzior's January 3, 2013 notes which recounted Plaintiff's admission to the VA hospital emergency room under section 5150 while intoxicated (with blood alcohol level of 383 and positive test result for cannabis), and his refusal to receive CDTP services;

11) LCSW Lylena M. Self's January 2, 2013 notes which indicated Plaintiff refused to undergo chemical dependency treatment following admission to the VA hospital under section 5150;

12) Plaintiff's July 6, 2012 admission to Dr. Santy that he had been drinking heavily about a month prior and refusal to undergo chemical dependency treatment following admission under section 5150 because he believed they did not help; and

13) The January 9, 2013 progress notes listing Plaintiff's past medical history which included alcohol and cannabis dependence.

AR 353, 348, 446, 392, 457, 485, 1074, 762, 864, 757, 796, 927, 773. The record was riddled with evidence of Plaintiff's substance use.

It is undisputed that Plaintiff had a history of being diagnosed with PTSD. Nonetheless, the record showed that substance use remained a problem, for which Plaintiff repeatedly refused treatment. The ALJ therefore correctly found it was a primary problem and a contributing factor material to the disability determination.

### III.  CONCLUSION

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff, John L. Work.

IT IS SO ORDERED.

Dated:   **March 14, 2016**            /s/ Sandra M. Snyder
                                       UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

15